ROSE & WIFE, Appellants, v. McHOSE's EXECUTORS, Respondents,

1. One J. McH. died leaving him surviving his wife, and five children of ages varying from seven to nineteen years. His property consisted exclusively of personal property. His will is as follows: " In the name of God, Amen. I, I. McH., of, &c., being of sound mind, &c., do, therefore, make, ordain, publish and declare this to be my last will and testament—that is to say, First, After all my debts are paid and discharged, the residue of my estate, real, personal and mixed, I give and bequeath and dispose of as follows, to-wit, viz.: All my estate. real, personal and mixed, I give to my beloved wife Mary Ann, and all money that may be in possession or at interest, or in any situation whatsoever at the period of my demise, including any and all dues to me then owing, shall to the said wife, Mary Ann, be to her as my last will and testament, reserving to her the right of disposal in the manner following, to-wit, viz.: Provided, however, that if my aforesaid wife Mary Ann shall of her own will and free accord unite herself in the bonds of matrimony to another person, then the full meaning of this will, as above devised, shall be transferred to the surviving children of the testator according to law, reserving to the said Mary Ann her right of dower according to said law. And further, that if my wife, the said Mary Ann, shall remain single during the minority of our children, then she shall at their maturity give to the said children, who may then be living, their right, title and interest to, and in, for any property belonging to my estate, real, personal and mixed, reserving to herself the right of dower hereinbefore stated. And further, that the division of the said property then existing shall be made equal among my children, share and share to each alike, without distinction, preferment or feeling. And further, that in order to secure to my said wife Mary Ann the furtherance of my will and testament, and to my children their right, title and interest hereby bequeathed to them out of my property, I hereby appoint and constitute as the executors of this, my last will and testament," &c.

*Held,* that the widow did not become invested, by virtue of the will, with the power to dispose at pleasure of the property bequeathed; that those portions thereof to which the children would become ultimately entitled she held as trustee for them; that, although she might, entirely in accordance with the directions of the will and in conformity to the trust confided in her, pay over to each child, on its arriving at majority, its share of the property bequeathed, yet she could not, under all circumstances, be *compelled* so to pay over; that such payment, if it could be enforced at all, must be enforced through the intervention of a court of general equity jurisdiction.

*Appeal from St. Louis Circuit Court.*

On the final settlement of the executors of Isaac McHose, his eldest child, Mrs. Margaret Rose, and her husband, filed

their petition for the distribution to them of one-sixth of the estate (consisting entirely of money and notes) of the decedent. The probate refused this prayer, and Rose and wife appealed to the circuit court. The facts were there agreed to be as follows, viz. : Isaac McHose, late of the county of St. Louis, died therein on or about July 29, 1852, having made his will, which was duly admitted to probate and record. The executors therein named were duly qualified as such. At the time of his death, the testator left a widow, named Mary Ann, and five children, to-wit, Margaret, one of the petitioners, married to Edward Rose, who was, when this petition was filed, between twenty-one and twenty-two years of age ; Louisa, who was then about nineteen years old ; Abraham, about seventeen years ; Elizabeth, about fifteen years, and Joseph, about ten ; all of which children, as also the said widow, are still living. The widow has remained unmarried. A certified copy of the will is part of this case. At the December term, 1855, of the St. Louis probate court, and before the filing of this petition, said executors made final settlement, showing a balance in their hands of $22,629.50. The widow had received $2,618.65, so that the whole estate, which consisted altogether of personalty, amounted to $25,248.15. The widow has done no act indicating her option in case of a division to receive one-third of the personalty or a child's part thereof; but has always hitherto denied that the time for a division is yet come. Isaac McHose's will was in the following words: " In the name of God, Amen. I, Isaac McHose, of the city of St. Louis, county of St. Louis, and State of Missouri, being of sound mind and memory, and considering the uncertainty of life in its frail and transitory course, do therefore make, ordain, publish and declare this to be my last will and testament—that is to say, First, After all my lawful debts are paid and discharged, the residue of my estate, real, personal and mixed, I give, bequeath and dispose of as follows, to-wit, viz. : All my estate, real, personal and mixed, I give to my beloved wife, Mary Ann and all money that may be

in possession, or at interest, or in any situation whatsoever ever at the period of my demise, including any and all dues to me then owing, shall to the said wife, Mary Ann, be to her as my last will and testament; reserving to her the right of disposal in the manner following, to-wit, viz. : Provided, however, that if my aforesaid wife Mary Ann shall of her own will and free accord unite herself in the bonds of matrimony to another person, then the full meaning of this will as above devised shall be transferred to the surviving children of the testator according to law, reserving to the said Mary Ann her right of dower according to said law. And further, that if my said wife, the said Mary Ann, shall remain single during the minority of our children, then she shall at their maturity give to the said children, who may then be living, their right, title and interest to, and in, for any property belonging to my estate, real, personal and mixed, reserving to herself the right of dower hereinbefore stated. And further, that the division of said property then existing shall be made equal among my children, share and share to each alike, without distinction, preferment or feeling. And further, that in order to secure my said wife Mary Ann the furtherance of my will and testament, and to my children their right, title and interest hereby bequeathed to them out of my property, I hereby appoint and constitute as the executors of this, my last will and testament, (revoking all others by me made,) Mathias Steitz and Bartholomew Rice, both of the city and county of St. Louis, and state of Missouri, desiring them to carry out, as far as possible and practicable, the wishes expressed by me in this, my last will and testament. In witness whereof, I have hereunto subscribed my name and affixed my seal this ——— day of January, Anno Domini one thousand eight hundred and fifty-two (1852). Isaac McHose (seal)."

Upon the case above stated, the court was asked by the petitioners, Edward Rose and wife, to declare the law to be that they were entitled to a child's share of said estate of the testator, that is to say, to one-sixth part thereof, and make

an order accordingly, which the court refused to do. The court declared the law to be that application for a division of the estate of Isaac McHose was premature; that no division was compellable until the youngest child of said McHose should arrive at full age, or until Mary Ann McHose should marry, whichever event should first happen; that in the mean time said Mary Ann McHose was entitled to the possession of said estate.

*T. Polk*, for appellants.

I. By the proper construction of the will of McHose, should his widow marry a second time, all the estate would pass over to the children, excepting such portion as the law would give to the widow as dower. If she remains single she will still have her dower in her own right; and will hold possession of all the residue as trustee for the children until it is to be handed over by her to the children, as provided in the will. The widow has remained single; and by the will his or her several portions are to be handed over to each one of the children when they shall severally attain their majority. This allotment is not to be deferred until the youngest child attains its majority. (See Overton and wife v. Davy's ex'r, 20 Mo. 273.)

*T. T. Gantt*, for respondent.

I. First, the will of McHose, in the event of marriage by Mrs. McHose during the minority of the children, determines and defeats the estate given to her, and confines and remits her in that event to her right of dower. Secondly, the will makes provision for the children of the testator, and gives the whole of the property to Mrs. McHose during a designated period, with power of disposal. Thirdly, the will provides that if Mrs. McHose should remain single, then, upon the maturity of the children (by which is meant the arrival of the youngest at the full age of twenty-one years), all the property of said testator " then existing" (that is, remaining undisposed of) is to be divided equally among his

children, share and share alike, subject to the dower of the widow. Only one division was contemplated, not as many as there are children.

NAPTON, Judge, delivered the opinion of the court.

It is extremely difficult to give a satisfactory interpretation of the will of McHose. This difficulty does not proceed from the use of ambiguous terms, but from the very peculiar style in which the testator chose to express his ideas, and the indistinctness of the ideas themselves. In some cases it is plain that he does not mean what he says, and his intentions, as indicated by his words, must be totally disregarded in order to effectuate another intention more prominent in his mind. All that we can do is to give effect to the main and leading purposes of the testator, not pretending that the whole will can be reconciled throughout, and all its details be executed.

The interest which is given by this will to the widow and children of the testator is, upon the whole, clear enough, and we think it is precisely what the law would have given them, neither more and no less. We do not adopt the interpretation which the counsel for the widow has insisted on, that by the will the widow is owner of the entire estate, with power to dispose of it at her pleasure, and subject to a division with her children of what remains at her second marriage or upon her youngest child's attaining majority. Such a construction we regard as totally at variance with a leading and prominent object of the testator manifested throughout the will. When he speaks of the share of his children, he speaks of it as "*their* rights, title and interest—as something fixed and determinate, not subject to the will of any one else, nor liable to be defeated by contingencies. It is true that some expressions in the will have to be disregarded in giving this construction to it. He speaks of the division, to which he refers upon the happening of certain events, as confined to his children "then living;" but he evidently re-

refers to a dying without issue, in which event the provision was unnecessary. If the case had been put to the testator, of one of his daughters marrying and dying before twenty-one, leaving issue, and he had been asked whether he designed to cut off his grand-child, no doubt can be entertained that his answer would have been in the negative. The testator did not contemplate such a case; it was not in his mind, and we must disregard the words "then living" in order to carry out his real purposes.

In construing this will we have not thought it important that very great stress should be laid upon any particular expression or detached clause. In some of them it will be seen that the testator has a very confused idea, or none at all, or means the very reverse of what he says. He speaks of his wife marrying " of her own free will," as though he contemplated the contingency of her being compelled to marry. After beginning with an apparently absolute devise of his entire estate to his wife, he proceeds to " reserve to her the right of disposal in the manner following," and then the testator's mind appears to wander to another subject.

Notwithstanding the apparent absurdities and contradictions and obscurities about this will, we feel no doubt about the main results. The principal object in view is to provide for his wife and children, and for this purpose he fixes their relative interests in all contingencies at just what the law fixes it. Up to the period of a second marriage, if such an event should occur, and up to the period of the arrival to full age of his youngest child, he gives his wife, in addition to her fixed share, the use and control over the whole estate, with power to manage it, as he himself if living would, for the maintenance of herself and children, and for their education and advancement. So far as the interest of the children is concerned, the wife is but a trustee, and is only authorized to use the fund entrusted to her care for such purposes as fall within the object in view by the testator. That it would be in accordance with the spirit and meaning of the trust to advance to any of the children, upon marriage or upon ma-

jority, such share of the estate as would ultimately be coming to such child, or such portion of it as would not impair the capacity of the mother to keep up the home establishment, is also very clear.

The question in this case is whether the widow is *compelled* to pay over to the oldest child, on arriving of age, the share of the estate to which, beyond doubt, she is entitled ultimately. That such a payment, by way of advancement, would be in the power of the mother, and would be entirely in accordance with the directions of the will, and in conformity to the trust confided to her, we have already declared; but we have been very much embarrassed to determine whether the rights to this share is a positive one, under the will, and to be enforced without regard to circumstances. The question is not now whether a court of chancery would see to a reasonable performance of the trust confided to Mrs. McHose by the will of her husband, but whether the will gives an absolute right to each child, on attaining majority, to the possession of the property secured to that child by the will. Either construction is entirely consistent with the provision which gives the widow the control and use of the property until the youngest child attains majority. By requiring the widow to advance each child's portion upon attaining majority, she would still retain the use of her own portion and all the portions of the children not advanced, and the estate would only be diminished in proportion as the expenses of the family would be by the separation of each child as he or she became of age. This construction is quite consistent with some of the language employed by the testator, but is difficult to be reconciled with other portions. He declared that if his wife remained single during the minority of his children " then she shall at their maturity" give the children their shares. The word " then" may be understood, not as indicating the point of time when the payment was to be made, for that is fixed " at their maturity," but as simply equivalent to " in that event." The words " at their maturity" very strongly favor the conclusion contended for by the

plaintiff, since it may be very naturally understood to mean the maturity of each child, and must be very much distorted to mean eleven years after the oldest attains her majority. But the sentence does not end here; he proceeds to direct his wife to give at their maturity to his children "who may then be living;" and he further says, that "the division of the said property *then existing* shall be made equal," &c. These latter expressions are scarcely reconcilable with the idea of giving to each child as the age of majority is attained, but appear to look to a *single division* upon reaching a period when some of the children might be living. The words "then existing" contemplate the possibility of a diminution of the estate by reason of the necessary expenditure in maintaining, educating and advancing the children, and keeping up the domestic establishment; but this is not conclusive as to the point of time when the distribution is to be made. Upon the whole we are not satisfied that it was the testator's intention that his widow should be compelled to pay over each child's portion as that child became of age, although there are many expressions in the will which would lead to that conclusion. The prevailing idea of the testator seems to have been of a single division to be made at one time, and of course that could only be made when *all* the children were of age. We have no doubt of the power of the widow to pay over portions to her children as they marry or attain their majorities, and we by no means intend to say that, under certain circumstances, a court of chancery would not compel such payments. She is a trustee for her children, not accountable to the probate court for the manner in which the estate is managed, but still not beyond the reach of a court having general equity jurisdiction. We do not perceive any reason why Mrs. McHose's share of the property, or such proportion of it as would not impair the means of her mother in keeping up the home establishment, has not been paid. There may be good reasons. It might be proper to secure her separate enjoyment of the property so that it would not be liable to the debts or contracts of the husband.

We confine our opinion to the case now presented, and we go no further than to say, that the widow is not compellable to pay out the share of the plaintiff under the will, at this time, without regard to circumstances.

The other judges concurring, the judgment is affirmed.