**Mrs. Bond Sneed Denson McCAULEY, Appellant,**

v.

**L. Keith SIMMER et al., Appellees.**

**No. 13511.**

Court of Civil Appeals of Texas.

Houston.

June 16, 1960.

Rehearing Denied July 7, 1960.

Kirchheimer & Kirchheimer and Ed S. Atkinson, Houston, Thoedore R. Kirchheimer, Houston, of counsel, for appellant.

Leon Jaworski, Houston, M. W. Parse, Jr., and Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, of counsel, for appellees L. Keith Simmer, Bank of the Southwest National Association and T. H. Monroe.

George A. Hill, Houston, pro se.

Max A. Garrett, Houston, for appellee Vernon Denson.

George O'Brien John, Houston, Guardian Ad Litem, for appellees, Arthur Talk, Jr. and Lillian Denson, Minor children of Bond Sneed Denson McCauley, Deceased.

WERLEIN, Justice.

This suit was brought by Mrs. Bond Sneed Denson, a feme sole, against L. Keith Simmer, George A. Hill, T. H. Monroe, and Bank of The Southwest National Association, Houston, hereinafter called Bank, individually and in their capacities as trustees of the "Bond Sneed Denson Trust", to set aside such trust which had been established by her with her then husband, Vernon Denson, joining therein. By amended petition filed subsequent to the order of the court sustaining defendants' plea in abatement, plaintiff's said former husband, Vernon Denson, whom she had divorced some six months prior to filing this suit, and her minor children, Arthur Talk, Jr., son by a former marriage, and daughter, Lillian Denson, were made party-defendants. Thereafter plaintiff married C. F. McCauley, who was joined as party-plaintiff in a second amended petition.

After filing answers consisting of general denials, all of the defendants, including said minors, by and through their guardian ad litem, George O'Brien John, filed motions for summary judgment. The defendant, Vernon Denson, also filed an amended answer in which he denied that he was not a necessary party and did not have any interest in the suit. He alleged he was a trustor or grantor to the trust, had joined in the trust for all purposes, had contributed thereto property of a value in excess of $100,000, was in full agreement therewith and the benefit it provided for his daughter, Lillian Denson, and that the trust should be sustained in all particulars.

The defendants, Simmer, Hill, Monroe and Bank, also filed a cross-action alleging, among other things, the execution of the trust agreement and praying for judgment declaring and determining its validity. The plaintiffs filed an answer to defendants' cross-action and also a motion for summary judgment alleging that the trust was revocable as a matter of law and void as being against public policy.

From the judgment of the court granting defendants' motions for summary judgment and denying plaintiffs' motion, plaintiffs perfected their appeal. Thereafter, on October 21, 1959, the plaintiff, Mrs. McCauley, died. Her surviving husband, C. F. McCauley, is now the sole appellant.

By his first Point appellant asserts that the trial court erred in granting defendants' motions for summary judgment. He contends that the testimony by deposition of Mrs. McCauley, her affidavit and pleadings raise fact issues of fraud, duress and undue influence which induced Mrs. Bond Sneed Denson (hereinafter referred to as Mrs. Denson or Mrs. McCauley) to execute the trust agreement.

The record shows that Mrs. Denson was granted a divorce from Mr. Denson on March 4, 1957. The law firm of Fulbright, Crooker, Freeman, Bates & Jaworski, and L. Keith Simmer and John Freeman with such firm, represented Mrs. Denson in the divorce proceedings. In connection with the divorce and after considerable negotiations, a property settlement agreement was worked out between Mr. and Mrs. Denson. Such negotiations in behalf of Mrs. Denson were handled by L. Keith Simmer and John H. Freeman with the aid and suggestions of Mrs. Denson's step-father, Jim West, and T. H. Monroe, a friend of the West family. The property settlement was agreed to by Mr. Denson only after he learned that Mrs. Denson was going to put the properties set aside to her in trust for herself and said minor children. The trust agreement, which is quite long, will not be set out in full. It was executed on February 20, 1957, and duly signed by Mrs. Den-son as grantor and by the trustees, Simmer, Hill and Bank. Below their signatures and above the acknowledgments is written, "Vernon Denson, husband of Mrs. Bond Sneed Denson, having read and understood the provisions of this indenture, joins in this indenture for all purposes. Executed this 20th day of February, 1957 at Houston, Harris County, Texas." Then follows the signature of Vernon Denson. The separate acknowledgment of Mrs. Denson and the acknowledgments of Mr. Denson and the individual trustees Simmer and Hill were taken on said date, and Bank's acknowledgment on February 21, 1957. T. H. Monroe did not execute the trust agreement, but in Article XXI thereof he is appointed an advisory trustee with purely advisory duties.

The property settlement agreement is dated February 14, 1957, and was acknowledged by Mrs. Denson the same day. The evidence shows that Mr. Denson signed and acknowledged the same on February 20, 1957, after the trust agreement had been executed by all parties thereto. The divorce decree expressly approves and confirms the property settlement agreement and makes it a part of the court's judgment. The divorce decree, however, makes no mention of the trust agreement. The property settlement agreement, in paragraph VI thereof, refers to the trust agreement in the following language:

"There has been discussed between the parties, the establishment of a trust consisting of all of Mrs. Bond Sneed Denson's separate properties for Mrs. Bond Sneed Denson and her two children. However, the said trust having been heretofore provided for by separate instrument and the matters discussed between the parties having been embodied in said instrument, no further agreement concerning said trust need be made."

We shall first consider whether appellant has raised fact issues in connection with his allegations of fraud, duress and undue influence. He relies upon plaintiffs' plead-

ings, and the deposition and affidavit of Mrs. McCauley, now deceased, to show issuable facts. Mrs. McCauley's deposition indicates that some months subsequent to the execution of the trust she became dissatisfied with it when the trustees refused to honor certain demands that she made upon them. Most of her testimony is indefinite and general. For example, she testified that the trustees had caused her an awful lot of unhappiness; that she didn't like the way they handled her property; that they misrepresented things and lied to her; that they did not carry out the terms of the trust; that they induced her to sign the trust instrument under false representations, and that they had ignored her wishes; that they stole her child and her property, and her government check, and stole everything she owned. She explained the last accusation by saying that all her property had been put in trust.

She admitted that she had requested Mr. Hill to act as trustee and in her affidavit she completely exonerated him from all wrongdoing. She also admitted that she had requested Mr. Monroe to serve as a trustee but that he had declined, although willing to give advice if called upon. She did not charge the Bank with any specific wrongdoing. She testified that although the property was placed in the trust, she was still to have control of it and the trustees were merely to help her. She admitted that she was told that the property was to be taken out of her name and was to be placed in the Bond Sneed Denson Trust. She complained that the trustees told her that she could have a voice in the managing of her property and could say how it was to be run and that they were to advise and help her, but nobody paid any attention to anything that she wanted done.

She testified that her reasons for executing the trust were that she wanted to have a trust fund to keep any future husbands from getting hold of her property. She did not want to have it all tied up, but certainly did not want to go through any community property settlements again. She also want-

ed to protect her children. She approved the trust provision that in the event of her death the property should not go to the children until they were thirty years of age.

In her affidavit, which was filed February 27, 1959, more than a year after her deposition was taken, Mrs. McCauley made more specific charges. She stated that she was informed by Mr. Monroe and Mr. Simmer that her step-father, Mr. West, would not agree to her getting a divorce and negotiating a property settlement with Denson unless she agreed to place all her properties in a trust which would tie up her property completely. She refused to agree to such an arrangement. She then stated that in discussing the arrangement of a trust for her properties with Mr. Simmer, he told her that she couldn't get a divorce unless she put her property in a trust, and could not get a divorce unless she agreed to a property settlement first; that upon being told this, she then agreed, and though she did not want to, she put her property into the trust. She said she was informed by Mr. Simmer that though the property was put in the trust the trustees were merely to advise her in the management of her property; that by putting it in trust there would be considerable saving from an income tax standpoint, and it would eliminate any future property settlements in the event she remarried and that any money received from the trust would not be considered community property of any future marriage; that though the property was placed in trust she would have control of the property; and that the only way she could protect herself against any future property settlements was to convey her property in trust.

She also stated that neither Mr. Simmer nor Mr. Freeman ever told her that they were the attorneys for the other trustee, the Bank, and that the Bank and Mr. Simmer could actually control the trust since two out of three could make decisions with respect to the property; that they never fully explained to her the legal effect that the trust would have on her property and did not tell her that it was an irrevocable trust

and that she could not get her property back, or that Mr. Simmer and Mr. Freeman could delegate their duties to anyone they chose, or that they could deal with her property and the trust property and make a personal profit on the same. She stated that at the time of the trust, it was made known to her by Mr. Simmer that Mr. Denson would be removed from her properties, and that Mr. Simmer did not tell her that he had agreed to lease part of the trust property to Denson, and further that no one told her to get independent legal advice before executing the trust instrument. She stated that she had confidence in Mr. Simmer, relied on his representations in executing the trust, and later discovered they were untrue. Substantially the same allegations are made in plaintiffs' second amended petition.

The law is well settled that a summary judgment should be granted only when there is no disputed fact issue in the case. All doubts as to the existence of fact issues should be resolved against the movant. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93; Murchison v. Post Independent School District, Tex.Civ.App., 258 S.W.2d 229, ref., n. r. e. The court is required to accept as true all evidence of the party opposing the motion for summary judgment and give such party the benefit of every reasonable inference which properly can be drawn in his favor. Reese v. Davitte, Tex.Civ.App., 255 S.W.2d 1015, error dism. See also Loud v. Sears, Roebuck & Company, Tex.Civ.App., 262 S.W.2d 548, no writ hist.; Jindra v. Jindra, Tex. Civ.App., 267 S.W.2d 287, writ ref., n. r. e.

In applying the law as laid down in the foregoing cases, we have concluded that appellant has failed to raise any fact issues of duress or undue influence. We think, however, that some fact issues have been raised, especially by Mrs. McCauley's affidavit, concerning alleged misrepresentations causing her to execute the trust agreement. We are of the opinion, therefore, that the court erred in granting the summary judg-

ment in favor of appellees, defendants below, unless appellees are right in the contention made by them in their first Counterpoint, that the trust in question having been created as a part of the property settlement and judgment in the divorce action, from which no appeal was taken, appellant was required, in order to set aside the trust, to meet the requirements of a bill of review which he could not do since he neither alleged nor raised any fact issue of wrongful conduct on the part of Vernon Denson, the opposite party, in procuring such judgment.

This brings us to the very difficult question as to whether the trust agreement is so tied into the property settlement agreement and the judgment of the court that it may not be set aside without pleading and proving the essential requirements of a bill of review. The property settlement agreement mentions that there had been discussed between the parties (Denson and Mrs. Denson) the establishment of a trust consisting of Mrs. Denson's separate properties for Mrs. Denson and her two children, and states that the trust having been provided for by separate instrument, and the matters discussed between the parties having been embodied in said instrument, no further agreement concerning said trust need be made.

It is appellees' contention that by such language the trust agreement under the attendant circumstances was incorporated into the property settlement agreement, which in turn was approved and confirmed by the court and made a part of the court's judgment, and that therefore the trust agreement cannot be set aside without also setting aside the property settlement agreement and the judgment of the court approving the same. Appellant, however, contends that the language used does not in any way incorporate the trust agreement as a part of the property settlement agreement, and does not approve or confirm the trust agreement.

The language used by the parties in the settlement agreement clearly indicates that they understood there was some connec-

tion or tie-in between the settlement agreement and the trust. If this were not so, there would have been no point in mentioning the trust. The reason assigned for not incorporating in the property settlement instrument any further agreement concerning the trust, was that the matters discussed pertaining thereto had already been embodied in the trust instrument. The trust agreement refers to other "necessary documents, including deeds, bills of sale, and other documents to transfer the title to all such property * * *" Of these other documents the deed and bill of sale which Mr. and Mrs. Denson executed, while dated February 25, 1957, were not acknowledged and delivered by Vernon Denson until March 4, 1957, the same day the judgment was rendered. As further evidence of the trust and property settlement agreement being executed as parts of one comprehensive transaction, certain uncontroverted testimony in the depositions of the parties may be considered.

Denson testified in his deposition that he would not have agreed to the property settlement and subsequently to the provisions of the judgment which embodied the property settlement without the trust being created; that he agreed to accept less in the property settlement in view of the creation of the trust and lessened his demands considerably because his daughter would share in the trust benefits; that if the trust were to be eliminated or set aside he would not be agreeable to the property settlement that he had made. His testimony is in a measure corroborated by the fact that he would not sign and acknowledge the property settlement agreement until the trust agreement had been executed by all parties thereto, and also by Simmer who testified that the trust was set up minutes or hours before the settlement became effective, although both were acknowledged by Denson on the same day, and that Denson insisted on the execution of the trust before he would sign the property settlement agreement, and that the instruments and acknowledgments bear that out.

It is true that Mrs. McCauley in her affidavit stated that the execution and conveyance of her properties in trust was not a part of any property settlement agreement between her and Denson, and that Simmer at no time informed her that it was to be a part of the property settlement with her husband. We think the first part of her statement is the expression of an opinion or a conclusion rather than a statement of fact. The factual part of her statement, which we must accept as true, is that Simmer at no time informed her that the trust or trust agreement was to be a part of the property settlement agreement. Although he did not so inform her, his testimony that he informed her that Mr. Denson would not sign the property settlement agreement until the trust was completed and executed is undisputed.

Simmer also testified that he discussed with Mrs. McCauley the matter of when the trust would be signed with relation to when the divorce would be granted, and told her very explicitly that Mr. Denson felt like he was giving up his claim to a substantial amount of property, and that the reason he was doing so was because his daughter was going to be taken care of in the trust; that Denson was insisting that the children be named in the trust as beneficiaries and that the trust be set up before the divorce went through and in advance of any trial of the divorce action. This testimony is not controverted by Mrs. McCauley. Simmer also advised Mrs. McCauley that when Denson was informed that she was planning on putting her property in trust for herself and her children, Denson said he would not make any of the contentions or demands that he could make if the case went to court because that was what he was working for—to set up something for his child; and that he was going to recede from his demands against the property involved in the divorce, both separate and community. Simmer further informed her that he thought Denson would sign the trust instrument for all purposes and not just pro forma, and that it would be a

husband and wife conveying the property to the trust. The evidence shows this was done.

Simmer further testified that Mr. Denson's contribution to the trust would be right at $100,000; that he told Mrs. McCauley that Denson was putting property into the trust, and that Denson had agreed to permit the trustees to use his exemption and any exclusions available to him in order to minimize the gift taxes. Such testimony is not denied or controverted.

It is true that Mrs. McCauley stated in her affidavit that "in the final settlement Denson received property of the money equivalent to the offer of settlement that he had made and more." We think this statement is in the nature of an opinion or conclusion of the witness. In any event, it does not contradict the fact that some of the property Denson claimed he was entitled to went into the trust, and that he receded from some of his demands and authorized the use of his gift tax exemption and any exclusions available to him.

We have concluded that the language of the instruments in question coupled with the above uncontroverted testimony showing the understanding of the parties and that Mrs. McCauley executed the trust with definite information concerning Denson's position with respect to the property settlement and trust and his interest therein, shows that the trust agreement and property settlement agreement, which was approved by the court and made a part of the court's judgment, are so interwoven as to constitute parts of one transaction and therefore the trust may not be set aside without attacking by means of a bill of review the property settlement agreement and the judgment to the extent it approves and incorporates such agreement.

We think this conclusion is supported by the further fact that Denson had the right to refuse to sign the property settlement agreement and to introduce evidence upon the divorce hearing concerning his property rights and to insist upon the court adjudicating the same. This right he gave up in reliance upon the information given him by Mrs. Denson's attorney, that she was putting in the trust the property set aside to her in the property settlement agreement in the event of divorce. Mrs. Denson was fully informed of such fact and executed the trust agreement with knowledge of Denson's position in the matter and his contribution to the trust. It would be difficult to determine the position Denson might now find himself in with respect to the rights he gave up in connection with the property settlement agreement and the final judgment of divorce approving it, if the trust agreement to which he is also a party, trustor and grantor, should be set aside.

See Gaudalupe-Blanco River Authority v. City of San Antonio, 1947, 145 Tex. 611, 200 S.W.2d 989, in which case the court held that the purchaser of the property of S. A. P. S. C. O. by the City and its lease to G. B. R. A. constituted a single transaction although the conveyance and lease were evidenced by separate instruments, since they were executed at or near the same time as the result of a common understanding to consummate one over-all transaction, and therefore they had to be construed together as one contract. Although such case and the present suit are not altogether analogous, we think the reasoning of the court and the principle enunciated are applicable to the instant case or, in any event, persuasive.

We think the present case is distinguishable from Henderson v. Little, Tex.Civ. App., 248 S.W.2d 759, ref., n. r. e., cited by appellant. In that case the court found that W. G. Salsbury was not a partner of either W. B. Salsbury or Burl Little, and that the warranty deed to Marion Little and the mineral deed to W. G. Salsbury were not executed by W. B. Salsbury to accomplish the single purpose of dissolution of the partnership business of W. B. Salsbury and Burl Little, and hence the trial court did not err in refusing to construe such instruments together. The deeds were separate and distinct papers between different parties

and not made with reference to each other or for the accomplishment of a single purpose.

Appellant, in contending that the trust is no part of the settlement agreement, asserts that the trust agreement was immediately effective upon its execution and would have continued to be effective even if the divorce had not been granted and the property settlement had not been approved by the court. Appellant relies upon the cases of Hammett v. Farrar, Tex.Com. App., 29 S.W.2d 949, and Monday v. Vance, 92 Tex. 428, 49 S.W. 516, in asserting that the trust agreement constitutes a present conveyance of the trust property as of the date of delivery of the instrument. Appellees do not deny that the trust agreement became effective on February 20, 1957. Indeed, they have pleaded in their cross-action that it did become effective on that date and has been effective ever since then.

It is our view, however, that the trust has been effective as a part of an effective property settlement which was approved by the court and made a part of the court's judgment. This is far from saying that it would have continued to be effective if the divorce had not been granted and the property settlement had not been approved. The trust is so interwoven into the settlement agreement and the divorce that had the divorce not been granted and the property settlement had not been approved, not only Denson but Mrs. Denson as well would have had the right to set aside the trust, which, though not so expressed, was undoubtedly understood by the parties to be conditional upon both the divorce and the approval of the property settlement agreement. Indeed, the testimony shows that one of the most important things in the mind of Mrs. Denson was the obtaining of a divorce. It is also significant that the deed and bill of sale to the trust property were not acknowledged and delivered by Denson until the divorce was granted. We think the controlling consideration is the understanding of the parties that the property settlement would not be effective until the trust was completed and executed and that the instruments were all executed as a result of such common understanding to consummate one over-all transaction, which was not finally accomplished until March 4, 1957 when the divorce was granted, the property settlement was approved and made a part of the court's judgment, and the deed and bill of sale were delivered to the trustees.

Appellant has pleaded in the alternative that the property settlement agreement and judgment approving it should also be set aside. He has not, however, charged Denson with wrongdoing of any kind. Indeed, Denson was not made a party defendant until after the court sustained defendants' plea in abatement. We are of the opinion that appellant may not set aside the property settlement and trust without also setting aside the judgment of the court insofar as it approves the property settlement. It is clear that appellant has neither alleged nor shown any grounds for setting aside the court's judgment. Under the well settled law in this State, the person complaining of a judgment must show in a bill of review by pleadings and proof an act of wrongdoing or knowledge thereof on the part of the opposite party to the litigation which led to the erroneous judgment. Alexander v. Hagedorn, 1950, 148 Tex. 565, 226 S.W. 2d 996; Sedgwick v. Kirby Lumber Co., 1937, 130 Tex. 163, 107 S.W.2d 358. As stated by the Supreme Court in Alexander v. Hagedorn [148 Tex. 565, 226 S.W.2d 998]:

"Although the bill of review is an equitable proceeding, before a litigant can successfully invoke it to set aside a final judgment he must allege and prove: (1) a meritorious defense to the cause of action alleged to support the judgment, (2) which he was prevented from making by the fraud, accident or wrongful act of the opposite party, (3) unmixed with any fault or negligence of his own."

The Supreme Court said substantially the same thing in the Sedgwick case. Since

there are no allegations or proof of any wrongdoing or knowledge thereof on the part of Denson, or collusion between him and Simmer, there is no merit in appellant's contention that the property settlement agreement and judgment should be set aside. See Wilson v. McLemore, Tex.Civ. App.1951, 242 S.W.2d 791, ref. n. r. e.; Harn v. Phelps, 1886, 65 Tex. 592.

The cases cited by appellant are factually inapplicable to the present case. In MacMillan v. MacMillan, Tex.Civ.App., 72 S. W.2d 611, the application filed was not a bill of review but an application for new trial which was presented within the statutory time. In Watson v. Texas & Pacific Ry. Co., Tex.Civ.App., 73 S.W. 830, it does not appear from the opinion whether the opposite party participated in or had knowledge of the alleged fraudulent dismissal of plaintiffs' suit, or even whether the judgment of dismissal was with prejudice so as to be a final judgment. In Cetti v. Dunman, 1901, 26 Tex.Civ.App. 433, 64 S.W. 787, writ denied, and also in LeMaster v. Dalhart Real Estate Agency, 1909, 56 Tex. Civ.App. 302, 121 S.W. 185, the fraud was alleged to have been perpetrated by the opposite party or his attorney.

■ Appellant, by his second Point, complains that the court erred in overruling plaintiffs' motion for summary judgment and in holding that the trust indenture complied with Sec. 41 of the Texas Trust Act and was irrevocable. Article 7425b, Sec. 41, Vernon's Ann. Texas St., provides:

"Every trust shall be revocable by the trustor during his lifetime, unless expressly made irrevocable by the terms of the instrument creating the same or by a supplement or amendment thereto."

Appellant refers to a number of cases, forms and textbook statements in which irrevocability of trust instruments is expressed at some length or at least by as many as five words stating, "This trust agreement is irrevocable." In the instant case no such separate or independent state-

ment is made. Appellees contend, however, that the trust agreement is expressly made irrevocable in its granting clause, which reads:

"* * * the grantor does hereby irrevocably sell, assign, grant, convey, transfer, and set over to the trustees the property described in Schedule A annexed hereto, * * *"

and, therefore, the requirements of Sec. 41 of the Trust Act are complied with.

We have not found, nor been cited to, any case directly in point, nor to any case which shows a legal deficiency in the language used in the trust indenture in question irrevocably granting the property to the trustees. While it might have been advisable from a practical standpoint to have stated more explicitly and in an independent phrase or sentence that the trust agreement or indenture is irrevocable, thus making it so crystal clear that "he that runs may read," it is our view that the language used can have no other meaning than that the property is irrevocably granted, transferred and set over to the trustees, thereby making their management of the trust and the trust irrevocable.

■ We agree with appellant that the irrevocability of the trust must be shown by the terms and language of the instrument creating the trust or by a supplement or amendment thereto, and not by inference or implication. We think this is done in the indenture in question and that the express use of the word "irrevocably" in the granting clause meets the requirements of the statute and is legally sufficient to make the trust agreement irrevocable. We cannot conceive of any other purpose or explanation for the use of such word. The authorities cited by appellant do not militate against our conclusion, although they indicate the better drafting practice would be to make the trust irrevocable by clear, concise language in an "irrevocability clause". See 22 Texas Law Review, pages 123 and 132; Vol. 10 Baylor Law Review, page 32; In re O'Brien's Trust Estate, 1946, 197 Okl. 436,

172 P.2d 607; Fernald v. Lawsten, 26 Cal. App.2d 552, 79 P.2d 742.

Appellees further contend that under our Trust Act and similar trust acts making trusts revocable unless expressly made irrevocable, trusts supported by a legal consideration, may not be revoked even though not expressly made irrevocable in so many words. They rely for this proposition on Touli v. Santa Cruz County Title Co., 20 Cal.App.2d 495, 67 P.2d 404, and Harrison v. Johnson, Okl.1956, 312 P.2d 951. Such proposition finds some support in the Harrison case, but the Touli case merely holds that the statutory provision does not authorize revocation of a deed of trust given as security for payment of an obligation. In view of our holding, however, it is not necessary to pass upon the question, and we refrain from doing so. Nor is it necessary to decide herein whether Mrs. McCauley could revoke the trust even though revocable since the other trustor, Denson, opposes revocation.

By their last Point appellants assert that the trial court erred in overruling plaintiffs' motion for summary judgment because the transaction wherein plaintiffs' attorneys acquired Mrs. Denson's property as trustees was void as against public policy, as a matter of law. Their contention is chiefly based upon the fact that Mr. Simmer was Mrs. Denson's attorney and that the law firm by which he was employed represented the Bank, and both Simmer and the Bank became trustees of the estate, and further because the Bank was to receive a minimum of $2,500 per year for serving as trustee and Mr. Hill was to receive $1,000. Appellant further asserts there is a presumption of undue influence because of the attorney and client relationship between Simmer and Mrs. Denson; that Mrs. Denson had no independent legal advice; that plaintiffs' attorney set up a trust that she did not want; and that the trust provisions are against public policy in that they provide that the trustees could deal with the trust and retain profits made in connection with such dealings. Appellant relies mainly upon Cooper

v. Lee, 1889, 75 Tex. 114, 12 S.W. 483; Israel v. Sommer, 292 Mass. 113, 197 N.E. 442; Webster v. Kelly, 274 Mass. 564, 175 N.E. 69, and Allen v. Moushegian, 1947, 320 Mass. 746, 71 N.E.2d 393, and Slay v. Burnett Trust, 1945, 143 Tex. 621, 187 S.W. 2d 377. We shall not discuss these cases other than to say that they are not factually analogous to the present case. In each of them the attorney who was sued had received a beneficial interest in the property conveyed to him by the client or had retained property or profits to which he was not entitled.

In the instant case the conveyance is made to the trustees as such. They are not given any beneficial interest in the property but may receive and be paid reasonable compensation for their services. The trust agreement provides, in Article XVIII thereof, that for their services the trustees shall receive and pay themselves, as part of the expenses of the trust, fair and reasonable compensation not exceeding in the aggregate the charges then being made by corporate trustees in Houston, Texas, for similar services. Plaintiffs' Exhibit 14 attached to Simmer's deposition shows that the property turned over to the trustees had a valuation of around $450,000. No complaint is made that the trustees' fees were excessive. Said exhibit also contains the statement that if the Bank could not break even on the fees stipulated, they would want the figure revised or the Bank would withdraw.

We are of the opinion that reasonable compensation for services actually rendered does not make a trustee a beneficiary of a trust or disqualify him from serving. As stated in the Restatement of The Law, Second Ed., Trusts, Sec. 126c, p. 271, "Although a trustee is entitled to compensation for acting as trustee, he is not as such a beneficiary of the trust."

The evidence shows that Mrs. McCauley sought out both Mr. Simmer and Mr. Hill to serve as trustees. Moreover, she was given the right to select some cor-

porate trustee other than the Bank of The Southwest, but she preferred such bank.

In Boyd v. Frost National Bank, 1946, 145 Tex. 206, 196 S.W.2d 497, 507, 168 A.L.R. 1326, contentions were made somewhat similar to those made by appellant in the instant case. The court stated:

"It is also contended that because Mrs. Pryor had selected for her attorney one whom the proofs showed also to have been a director and the legal adviser of the bank, there was a conflict of interest and the burden was upon the respondents as proponents of the will to show not only its execution but also that Mrs. Pryor fully understood the testament. In a direct proceeding to set aside the probate of a will, the burden is not so cast by the statute nor under the decisions, but rests upon those seeking to have the will declared invalid * * *. It does not follow that suspicion was thrown upon these testaments because of the relation between Mrs. Pryor and her lawyer, nor because of any other circumstance in evidence."

It is our view that the mere fact that Trustee Simmer is employed by or is a member of a large firm of lawyers, who also represent the Bank as attorneys or possess some official connection therewith, does not necessarily disqualify Simmer from serving as a trustee, or necessarily create a conflict between his services as trustee and as an employee or member of such firm. Furthermore, any disqualification of Simmer would not warrant setting aside the entire trust agreement as being against public policy.

In Carroll v. Smith, 1904, 99 Md. 653, 59 A. 131, the settlor brought suit to set aside the trust and for other relief, urging, among other things, that the trust deed was void and unenforceable since one of the trustees was his attorney, and that such fact condemned the deed conveying the trust property. The court held against such contention since the attorney took no interest un-

der the deed, and would receive only a share of the trustees' commissions as compensation for his services. See also Appeal of Livingston, 1893, 63 Conn. 68, 26 A. 470; Breadheft v. Cleveland, 1915, 184 Ind. 130, 108 N.E. 5, 110 N.E. 662; Shelton v. McHaney, 1936, 338 Mo. 749, 92 S.W.2d 173.

Appellant also contends that the trust indenture is void as against public policy because of the following provisions in Article V. thereof, reading:

"The Trustees are authorized to deal as such with any firm or corporation in which they or any beneficiary may be interested as a principal, and such firm or corporation shall be entitled to retain any profits made on any such transaction. The Trustees are further authorized to employ, as attorneys, brokers, or agents, or in any other capacity, any firm or corporation in which any Trustee or any beneficiary may be interested, and to pay to it or them, reasonable and proper compensation for services rendered in respect of any transactions so effected."

Certainly the trustees will not be permitted to violate the laws of the State of Texas, including Articles 7425b–10, 7425b–11 and 7425b–12, of the Texas Trust Act, or profit at the expense or to the detriment of the trust. No contention is made that they have done so. The language used in Article V. does not, as a matter of law, show any necessary conflict of interests. We do not construe it to mean that the trustees might retain profits rightfully belonging to the trust, but rather that profits accruing to firms or corporations with which the trustees have dealt in the expectation of benefit to the trust, may be retained by such firms or corporations although the trustees or beneficiaries of the trust may be interested therein. Nor do we think the provision as to employment of attorneys and others is as a matter of law against public policy since it is provided that such employees shall receive only reasonable and proper compensation.

In our opinion, if we are mistaken in the foregoing construction, any invalidity of such provisions would not under Article XV. of the trust indenture affect any of the other provisions of the indenture, and such other provisions would remain in full force and effect. Nor would such invalidity warrant our holding that the entire trust agreement is void as against public policy as a matter of law on appellant's motion for summary judgment.

We have concluded that the trial court did not err in granting defendants' motion for summary judgment and in refusing to grant a summary judgment to plaintiffs.

Judgment affirmed.