**W. C. SHELLBERG, Appellant,**

**v.**

**John A. SHELLBERG, Jr., et al., Appellees.**

**No. 17137.**

Court of Civil Appeals of Texas, Fort Worth.

Oct. 9, 1970.

Rehearing Denied Nov. 13, 1970.

Monning & Monning and Ben Monning, Jr., Amarillo, for appellant.

John M. Anderson, Fort Worth, for appellees.

## OPINION

BREWSTER, Justice.

A summary judgment was rendered for plaintiffs in a suit for a declaratory judgment and this appeal is from that decree. The case involved in part the construction of a trust agreement and of Sec. 41 of the Texas Trust Act, Art. 7425b, Vernon's Ann.Tex.Civ.St.

On June 1, 1948, John A. Shellberg, Jr., Robert C. Shellberg, Frank A. Shellberg, W. C. "Cantrell" Shellberg, and Mary Louise (Shellberg) Hazlewood each owned a ⅕ undivided interest in a section of land located in Moore County, Texas, and also owned the same interest in a quarter section of land located in Cleveland County, Oklahoma.

On the above date these five persons executed a written trust agreement by which they conveyed this realty in trust

to J. A. Shellberg and W. C. "Cantrell" Shellberg, jointly, as trustees. All other property used in connection with this realty was also conveyed by them to these trustees. Each of the parties to the trust agreement was required by the agreement to deliver $1,000.00 in cash to the trustees as operating capital for the trust.

This instrument provided that the conveyance to the trustees was for and during a term of 10 years from the date thereof. Later J. A. Shellberg resigned as trustee and the parties named John A. Shellberg, Jr. to replace him as trustee.

The trust instrument provided that the two trustees were to act jointly in the management and operation of the property. The purpose of the trust was to have the trustees jointly operate the realty, keep it intact and to have them invest funds belonging to the trust, all for the benefit of the beneficiaries of the trust.

The trustees were given the right to lease for oil and gas and to enter into any contracts relating to the trust property that they might deem beneficial to the trust. If a trustee resigned, the grantors could by written instrument appoint another to replace him. If a trustee resigned, the agreement provided that it was his duty under the agreement to deliver up the trust properties to the new trustee and to immediately render an accounting to him and to the beneficiaries of the trust.

At the end of the 10 year term the trust was to expire and the properties of the trust estate were to then revert to the grantors, their legal representatives, their heirs or assigns, as their interest may be.

The instrument further provided that if three (3) or more grantors therein desired to terminate the trust they could do so by executing, acknowledging and registering a written instrument terminating same.

On October 16, 1957, the five parties to the original agreement, by written agreement, reciting the payment of $1.00 and other valuable consideration to each of them, agreed with each other to extend the original trust agreement for another 10 year term, from June 1, 1958, to May 31, 1968, and then for an additional 10 year period from June 1, 1968, to May 31, 1978, unless a majority of the beneficiaries agreed to discontinue the trust at an earlier date.

The extension agreement provided that the original trust agreement, together with all its terms were to remain in full force without change, except as changed by the provisions of the extension agreement.

The trust created by these instruments was operated under those agreements until sometime in May, 1966, at which time a controversy arose between the beneficiaries and trustees as to whether the land should be planted for the following year. The controversy resulted in W. C. "Cantrell" Shellberg on May 6, 1966, executing a writing reciting that he thereby revoked the trust (together with the extension thereof) and that his interest in the property that was theretofore owned by the trust is now owned by him free of the trust. Such writing also stated the following: "I further declare that I am unwilling to serve as trustee for the remaining beneficiaries of such trust and hereby resign as trustee."

W. C. "Cantrell" Shellberg had been serving as a trustee of this trust from June 1, 1948, to the time he signed that instrument.

By this time in 1966, the beneficiary, Frank A. Shellberg, had sold his ⅕ interest in the section of land in Moore County, Texas, to the other four beneficiaries.

At the same time that W. C. "Cantrell" Shellberg gave the beneficiaries the instrument wherein he told them he was revoking the trust and resigning as trustee he also gave each of them a copy of a letter wherein he told them the following:

"I have revoked the trust of the Shellberg Estate property insofar as my one-fourth interest is concerned (and my one-

fifth interest in the Oklahoma property). Because of differences which cannot be adjusted by us I have also resigned as trustee. A copy of the revocation and resignation is attached to this letter. The original copy is being filed with the Moore County Clerk. A carbon copy, along with a copy of this letter, is being mailed to Mary Louise, Bob and Frank.

"I will continue farming the Moore County land. If you, the other owners or the trust desire to farm it I will be happy to discuss an arrangement with you. You have told me you are willing to let the land lay idle because of the differences that have arisen. I will not consent to this. Should you or the others not farm your three-fourths interest in the land I will farm it and pay the owners ¾ of ⅓ of the crops raised (less the cost of fertilizer and other customary landlord expenses).

"The farming implements are now on the premises. They are owned by all of us and should remain on the premises. I will not remove them and trust you will not. Should you or the other owners want to sell your interest in the implements I will be happy to discuss this matter with you. In the meantime I will use the implements in producing crops.

" * * * In my opinion the funds (and this includes stocks and bonds) which are on hand should be divided at this time and distributed. In any event I demand my one-fourth interest now."

A majority of the beneficiaries have never voted to terminate the trust.

By instrument dated December 11, 1966, the four other beneficiaries of the trust then appointed Robert C. Shellberg to serve as a trustee in place of W. C. "Cantrell" Shellberg.

In February, 1967, John A. Shellberg, Jr., and Robert C. Shellberg, who were then trustees of the trust, brought this suit as trustees, against the other three beneficiaries of the trust seeking a declaratory judgment declaring the rights of the parties, declaring whether the trust should still be administered by the trustees under the agreements, requiring W. C. "Cantrell" Shellberg to render an accounting for his actions as trustee, and asking for a decree requiring him to turn over to the present trustees of the trust all property belonging to the trust.

The plaintiffs filed a motion for summary judgment and so did W. C. "Cantrell" Shellberg.

The trial judge granted the plaintiffs' motion, denied that of W. C. "Cantrell" Shellberg and rendered summary judgment decreeing (1) that the trust agreement and extension agreements were supported by consideration, were valid, and provided the method of its revocation; (2) that the attempted revocation of the trust was contrary to the agreement and null and void; (3) ordered him to turn over and surrender to the current trustees all trust properties now in his hands; and (4) ordered him to file an accounting covering his acts as trustee during the period from May 6, 1966, to the date he delivers all the trust properties to the current trustees.

W. C. "Cantrell" Shellberg has appealed from this judgment.

Appellant's first point is that the trial court erred in holding that appellant could not revoke the trust.

We are convinced that the trial judge correctly held that the attempted revocation of the trust by W. C. "Cantrell" Shellberg was ineffective and did not result in the trust being revoked.

The question presented here for a decision is whether this contractual trust agreement and its related extension agreement, each of which is supported by valuable and legal considerations, are revocable by the trustor under Sec. 41 of the Texas Trust Act (Art. 7425b, V.A.T.S.) in view of the fact that none of such agreements expressly say in so many words that such trust is irrevocable.

■ The extension agreement recites a valuable consideration to each grantor as above indicated. By the original agreement each grantor relinquished his right to the possession, control and management of his interest in the trust realty for the term of the trust in consideration of the other grantors doing the same thing. Each grantor, in consideration of the other grantors doing the same thing, put up $1,000.00 in cash with the trustee as capital with which to operate the trust. The agreements in question were unquestionably contractual and were supported by valuable considerations.

The Texas Trust Act was enacted in 1943. We have been unable to find a Texas case that attempts to pass on this particular point. It almost came before the court in McCauley v. Simmer, 336 S.W.2d 872 (Houston, Tex.Civ.App., 1960, error dism.), but the court concluded that it was not necessary for them to pass on the question in order to decide the case and therefore it refrained from doing so.

Section 41 of the Texas Trust Act provides: "Every trust shall be revocable by the trustor during his lifetime, unless expressly made irrevocable by the terms of the instrument creating the same or by a supplement or amendment thereto."

This section of the Texas Trust Act was borrowed from the Oklahoma Trust Act. See article in 7 South Texas Law Journal 22, entitled "Revocation of Trust Under Texas Trust Act," which was authored by Professor Arthur Yao of St. Mary's University Law School at San Antonio, Texas, and also an article entitled "The Texas Trust Act," 22 Tex.Law Rev. 123, by R. Dean Moorhead.

The article by Professor Yao deals directly with this point that we have to decide and we believe the conclusions he has therein expressed on this point are correct. The work that he put into the preparation of his article has made our task in preparing this opinion somewhat easier.

At the time the Texas Trust Act was enacted in 1943 the Supreme Court of Oklahoma had not yet passed on the point that we have in this case, but in 1956 it did pass directly on such point in deciding the case of Harrison v. Johnson, 312 P.2d 951. In substance that Court held that a written contractual trust which was based on a consideration, and from the terms of which the court could tell the parties intended to make a final disposition of the property in the form of an irrevocable trust, even though the trust instrument did not expressly state that it was irrevocable, could not be revoked except by the mutual consent of the trustor and all beneficiaries of the trust.

This holding was made in the face of the Oklahoma statute that is substantially the same as Sec. 41 of the Texas Trust Act, providing that all trusts are revocable unless expressly made irrevocable. That court in effect held that this section of the Oklahoma Trust Act does not apply to a contractual trust that is based on a valuable consideration.

In the case at bar it is apparent from the trust instrument and the instrument extending the term of the trust, that the grantors intended that the trust in question could not be revoked prior to the end of the trust term, unless a majority of the beneficiaries consented to its termination at an earler date. A majority of the beneficiaries have not consented to terminate this trust.

The Supreme Court of Texas in Koy v. Schneider, 110 Tex. 369, 221 S.W. 880 (1920), has held that a later construction of an adopted statute by the courts of the state from which the statute is imported is strongly persuasive of the sense in which the statute was incorporated into the law of the adopting state.

We can think of no reason why Texas should not follow the holding of the Oklahoma courts in the Harrison case, supra. Our conclusion is that the decision in that case is sound.

Although California and North Carolina have statutes similar to Sec. 41 of the Texas Trust Act, they have the additional provision making the provisions pertaining to revocation applicable only to voluntary trusts. Cases from those states therefore would not help us much in deciding this case.

■ We hold that Sec. 41 of Art. 7425b, V.A.T.S., (The Texas Trust Act) is inapplicable to a trust that is created by contract and based on a valuable consideration. It follows that a proper construction of the trust instruments involved in this case is that by their terms such trust can only be terminated short of the trust term by the agreement or consent of a majority of the beneficiaries.

The instrument executed by W. C. "Cantrell" Shellberg on May 6, 1966, by which he attempted to revoke the trust is therefore ineffective and void and did not result in revoking the trust to any extent whatever. The trust is still in full force and effect and subject to being administered by the trustees and the trial court was correct in so holding.

By his 2nd point appellant contends that the trial court erred in holding that W. C. "Cantrell" Shellberg did not effectively revoke the trust because the appellees are estopped to deny that he effectively revoked same.

He bases this contention on the proposition that the instrument in which he advised the other beneficiaries that he was resigning as trustee also revoked the trust as to his interest in the trust estate. He contends that the beneficiaries accepted the part of the instrument by which he resigned, and are therefore estopped from refusing to accept the part of it by which he revoked the trust.

The rule relied upon by appellant is based on the proposition that one who accepts the beneficial parts of an instrument cannot then repudiate the disadvantageous parts of such instrument. See Reed v. Skelly Oil Co., 227 S.W.2d 360 (Texarkana, Tex.Civ.App., 1950, ref., n. r. e.).

■ We overrule this point and hold that the doctrine relied on by appellant does not apply to the facts of this case.

The trust instrument conveyed the property to two trustees and provided that their powers were joint; the management, control and operation of the trust was to be by the joint action of the two trustees. The instrument provided that if one trustee resigned that three or more of the grantors could appoint a successor trustee to replace him.

A trustee of this trust had the power to resign the office. No one had a right to stop him from doing so. If a trustee resigned, none of the grantors or beneficiaries could do anything about it. No acceptance by any of the grantors or beneficiaries was necessary in order to effect the resignation as trustee. In our opinion the other grantors and other beneficiaries of the trust did not "accept" the resignation of W. C. "Cantrell" Shellberg within the meaning of the principle of law relied on by appellant. W. C. "Cantrell" Shellberg effectively resigned when he told the other beneficiaries that he would not serve as trustee any longer and that he thereby resigned as such. No acceptance of the resignation was necessary and none occurred.

When this resignation occurred, the remaining beneficiaries were left in the situation of being beneficiaries of a trust that could not function until such time as they appointed a successor trustee to replace appellant. By its terms the trust required the joint action of its two trustees before it could operate effectively.

■ When they complied with the trust instrument and appointed a trustee to succeed appellant, the other beneficiaries did not thereby estop themselves from contending that appellant had no power to revoke the trust by his unilateral action. The beneficiaries received no benefit what-

ever by virtue of appellant's conduct in resigning. Under the facts of this case there was no estoppel.

Appellant's Point 3 is that a material fact question exists in the case and that the court therefore erred in granting a summary judgment for the trustees.

The trustees alleged that appellant "took possession of certain real and personal property belonging to said Trust and converted same to his own use * * *."

Appellant contends that there is a material fact issue as to whether or not such allegation is true. We overrule this contention.

In his own affidavits filed in this case in connection with the motions for summary judgment the appellant admitted the truth of such allegations when he swore to the following:

"Since May 6, 1966, I have claimed ownership of my one-fourth interest in the property free of trust. I have been in possession of the property as a co-tenant and have been willing for the trust to use the property, but it has not done so. I have never excluded the trust from the property I hold as co-tenant."

Thus by his own affidavit the appellant has admitted that he has been in possession since his resignation as trustee on May 6, 1966, of a part of the property that constitutes the trust estate.

Under our holding here the attempted revocation of the trust by appellant was wholly ineffective. Once he ceased to be a trustee by virtue of his resignation on May 6, 1966, appellant has not been entitled to have possession of any part of the trust estate as a co-tenant or otherwise. Once appellant executed the trust instrument and conveyed his interest in the trust property to the trustees he completely parted with his personal right to possession of the property as long as the trust remains in existence.

The trial court's judgment is affirmed.