

# Fourth Court of Appeals

## San Antonio, Texas

### OPINION

No. 04-13-00186-CV

Leticia R. **BENAVIDES**,
Appellant

v.

Shirley Hale **MATHIS**,
As Temporary Guardian of the Estate of Carlos Y. Benavides, Jr,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2012-CVQ-000427-D4
Honorable Oscar J Hale, Jr., Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Sandee Bryan Marion, Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  February 12, 2014

AFFIRMED

In the underlying litigation, Leticia Benavides sued Shirley Hale Mathis, As Temporary

Guardian of the Estate of Carlos Y. Benavides, Jr., for tortious interference with a contract and for

money had and received.  Mathis moved for both a traditional and no-evidence summary judgment

on both claims.  The trial court rendered judgment in favor of Mathis, and this appeal by Leticia

ensued.[1]  The dispositive issue in this appeal is whether income distributions paid to Carlos from

---

[1] After rendering summary judgment in favor of Mathis, the trial court severed out that judgment and it became final
and appealable.   In this same lawsuit, Leticia also sued Carlos Y. Benavides, III; Tomas Benavides; and Ana B. Galo

a family trust are his separate property or are community property. Because we hold the distributions are Carlos's separate property, we affirm.

## BACKGROUND

Leticia is the wife of Carlos Y. Benavides, Jr. There are no children from their marriage; however, Carlos has three adult children from his first marriage. Years before Carlos and Leticia's marriage, the Benavides Family Mineral Trust was created, in 1990, to hold in trust, manage, and control approximately 126,000 acres of mineral estate for its beneficiaries. Carlos, who is one of several participating beneficiaries under the trust, receives monthly payments of the net balance (after payment of certain expenses) of revenues from the trust estate.

On October 14, 2011, a Webb County Court at Law appointed Mathis as temporary guardian of Carlos's person and estate.[2] Subsequently, Mathis notified the trust's co-trustees of her appointment and demanded that all funds distributable to Carlos be distributed to her. In February 2012, counsel for Leticia wrote to the co-trustees asking that they deliver to Leticia one-half of all distributions owed to Carlos on the grounds that all trust distributions during the marriage were community property; thus, one-half of the distributions were owed to her. The co-trustees refused. About a month later, counsel for Leticia then made the same demand of Mathis. Mathis refused, and Leticia filed the underlying lawsuit. Mathis subsequently filed a motion for traditional and no-evidence summary judgment on Leticia's tortious interference and money had

___

as Co-Trustees of the Benavides Family Mineral Trust, alleging breach of fiduciary duty. The co-trustees moved for summary judgment on Leticia's breach of fiduciary duty claim, which the trial court rendered in their favor. Leticia appealed from that judgment in this same appellate cause number. However, on November 6, 2013, this court determined it lacked jurisdiction over the appeal from the judgment in favor of the co-trustees because the co-trustees' counter-petition for declaratory relief was still pending. Therefore, the summary judgment in favor of the co-trustees was interlocutory and this court dismissed that appeal. Since that dismissal, the summary judgment has become final and is the subject of an appeal pending before this court in cause number 04-13-00270-CV.

[2] Recently, one of Carlos's daughters was appointed permanent guardian of Carlos's person and Mathis is now the permanent guardian of his estate.

and received claims. Leticia responded. The trial court granted Mathis's motion without stating its grounds, and this appeal followed.

## DISCUSSION

In her traditional motion, Mathis argued all trust distributions paid to Mathis are Carlos's separate property, Leticia is not a party to or beneficiary under the trust agreement, and she does not have an ownership interest in any trust distributions. In her no-evidence motion, Mathis alleged there was no evidence of any ownership interest in any funds. Ordinarily when a party moves for both a traditional and no-evidence summary judgment and the trial court grants the motion without stating its grounds, we first review the trial court's decision as to the no-evidence summary judgment. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the non-movant failed to produce more than a scintilla of evidence under the no-evidence standard, there is no need to analyze whether the movant's summary judgment proof satisfied the burden related to traditional summary judgment motions. *Id.* However, in this case the propriety of the trial court's ruling on both motions depends on the answer to a single question: are the trust distributions to Carlos community property or separate property.[3] The answer to this question is dispositive of all grounds for summary judgment because both of Leticia's claims against Mathis are premised on her argument that the distributions are community property. Accordingly, we consider only the question of the character of the trust distributions, which depends on the relationship between Carlos, the trust, and the trust income.

---

[3] The elements of a tortious interference with contract claim are: (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred. *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995). Money had and received is an equitable doctrine applied to prevent unjust enrichment. *MGA Ins. Co. v. Charles R. Chestnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.). Essential to this claim is that the plaintiff has an ownership interest in the proceeds. *Id.* at 814.

We begin with the general rules regarding community property and separate property, which are well-established. Community property consists of the property, other than separate property, acquired by either spouse during marriage. TEX. FAM. CODE ANN. § 3.002 (West 2006). A spouse's separate property consists of the property owned or claimed by the spouse before marriage, acquired by the spouse during the marriage by gift, devise, or descent, and the recovery for personal injuries sustained by the spouse during marriage (except for recovery for loss of earning capacity). *Id.* § 3.001. Earnings from the separate estate of one spouse are community property. *Lipsey v. Lipsey*, 983 S.W.2d 345, 350 (Tex. App.—Fort Worth 1998, no pet.). A party claiming separate property has the burden of rebutting the community property presumption by clear and convincing evidence. *Bahr v. Kohr*, 980 S.W.2d 723, 728 (Tex. App.—San Antonio 1998, no pet.).

With these general rules in mind, we next turn to the issue of whether the trust income in this case is community or separate. Here, the distributions to Carlos are from a family trust created before Carlos and Leticia married. A trust is a method used to transfer property. *Ridgell v. Ridgell*, 960 S.W.2d 144, 147 (Tex. App.—Corpus Christi 1997, no pet.). "Courts have held that distributions from testamentary or inter vivos trusts to married recipients who have no right to the trust corpus are the separate property of the recipient because these distributions are received by gift or devise." *Sharma v. Routh*, 302 S.W.3d 355, 361 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see also Arnold v. Leonard*, 114 Tex. 535, 273 S.W. 799, 801 (1925) (holding that if receipt is by gift, devise, or descent to the spouse, then the property belongs to the spouse's separate estate). We agree with our sister court's conclusion in *Sharma* that, "in the context of a distribution of trust income under an irrevocable trust during marriage, income distributions are community property only if the recipient has a present possessory right to part of the corpus, even if the recipient has chosen not to exercise that right, because the recipient's possessory right to access

- 4 -

the corpus means that the recipient is effectively an owner of the trust corpus." *Sharma*, 302 S.W.3d at 364. Therefore, in this case, if the trust is irrevocable and if Carlos has no present, possessory right to any part of the corpus, then, as a matter of law, the income distributions are his separate property. The answer to this question lies in the unambiguous terms of the document that created the Benavides Family Trust.[4]

## A.      Is the Trust Irrevocable?

The trust document provides as follows:

> This Trust is expressly irrevocable, but may be amended from time to time, except as to the duration hereof, with the written consent of three-fourths (3/4) in interest or more of all of the then participating beneficiaries. . . . .

Despite the "expressly irrevocable" language, Leticia asserts the trust is revocable because it can be amended. "No specific words of art are needed to create an irrevocable trust." *Vela v. GRC Land Holdings, Ltd.*, 383 S.W.3d 248, 250 (Tex. App.—San Antonio 2012, no pet.). However, the instrument must clearly reflect the settlor's intent to make the trust irrevocable. *Id.*; *see McCauley v. Simmer*, 336 S.W.2d 872, 881 (Tex. Civ. App.—Houston (Galveston) 1960, writ dism'd) (holding express use of word "irrevocably" in granting clause legally sufficient to make trust agreement irrevocable); *see also* TEX. PROP. CODE ANN. § 112.051(a) (West 2007) ("A settlor may revoke the trust unless it is irrevocable by the express terms of the instrument creating it or an instrument modifying it."). Also, even with a revocable trust, an amendment does not result in the trust being revoked unless the words used in the amendment clearly show the settlor's intent to revoke the trust. *Soefje v. Jones*, 270 S.W.3d 617, 628-29 (Tex. App.—San Antonio 2008, no pet.). An intent to revoke the trust can be evidenced if an inconsistent disposition of property

---

[4] Leticia contends the trust document is not proper summary judgment evidence on which to resolve this issue because the document does not mention community or separate property. We disagree with Leticia's contention. The trust document expresses the settlors' intent as to whether the trust is irrevocable and whether the trust beneficiaries, such as Carlos, have a present, possessory interest in the corpus.

between the trust and the amendment means both cannot stand. *Id.* at 29. "In that circumstance, the amendment revokes the trust by implication, but only to the extent of inconsistency." *Id.* Revocation by implication is disfavored. *Id.*

Here, the trust language is clear: the trust is "expressly irrevocable." *See McCauley*, 336 S.W.2d at 881 (holding "express use of the word 'irrevocably' in the granting clause meets the requirements of the statute and is legally sufficient to make the trust agreement irrevocable"). "We cannot conceive of any other purpose or explanation for the use of such word[s]." *Id.* Nor do we believe the ability to amend the trust transforms an "expressly irrevocable" trust into a revocable trust. Therefore, we conclude the trust is irrevocable. We next consider whether Carlos has a present, possessory interest in the trust corpus.

## B.      Present, Possessory Interest

Leticia argues Carlos has a present, possessory right because he has the right to transfer his interest, receive a portion of the corpus, and receive all of his share of the corpus on termination of the trust. Leticia's arguments that Carlos has a present, possessory interest lack merit primarily because her argument in part confuses a present, possessory interest in the *income* from the trust with a present, possessory interest in the *corpus* of the trust. Nevertheless, to the extent part of her contention is that Carlos has a present, possessory interest in the trust *corpus*, we disagree with her arguments.

First, Leticia points to the trust's definition of "revenue," which includes all bonuses and royalties. Leticia argues that because bonuses and royalties are corpus, any bonuses or royalties paid as income to Carlos constitute distributions of the trust corpus; therefore, he has a present, possessory interest in the trust corpus, making the income community property. We disagree with Leticia's argument.

- 6 -

Minerals are a part of the land; therefore, as a general rule, royalties are considered corpus. *See Mitchell v. Mitchell*, 151 Tex. 1, 244 S.W.2d 803, 807 (1951). However, in any given case, the question of whether royalties constitute the corpus of the estate or constitute income can be decided only by reference to the trust document as a whole. *Id.* at 807-08; *see also Mitchell v. Mitchell*, 157 Tex. 346, 303 S.W.2d 352, 353-54 (1957); *In re Ray Ellison Grandchildren Trust*, 261 S.W.3d 111, 117 (Tex. App.—San Antonio 2008, pet. denied). If the trust document's language is not ambiguous and expresses the settlor's intent, we need not construe the trust because "it speaks for itself." *Ellison*, 261 S.W.3d at 117. Therefore, we do not focus on what the settlor intended to write; instead, we focus on the words actually used. *Id.*

The corpus of the trust at issue here constitutes all right, title, and interest in and to all oil, gas, and other minerals in and under certain lands (defined in the trust as "family mineral rights"). "Trust estate" is defined as

> all rights, title and interests of the participating beneficiaries in and to all of the oil, gas, and all other minerals of every kind and character (whether similar or dissimilar, hard or soft) in, and under all of the lands described in attached Exhibit "A" as well as any other lands or estates which may hereafter be added to this trust estate.

The income to which the participating beneficiaries are entitled consists of net revenues. "Revenue" is defined as

> all monies received by the Trust produced directly or indirectly by the trust estate or other property hereafter forming a part of the trust estate, including but not limited to, all bonuses, rentals, royalties, production payments and any other monies or things paid to the trust or earned by the trust on any short term investments of trust income prior to distribution.

The trust document then expressly states what constitutes "income" and not "corpus":

> all natural resources from all such lands, including all oil and gas and other minerals, and all rentals, royalties, overriding royalties, limited royalties, working interests, bonuses, oil or gas payments, and all manner of mineral rights and interests, and all manner of revenue or receipts or proceeds therefrom, and all moneys recovered by the Trustees through enforcement and collection of any and

all choses in action and claims in any manner arising out of this Trust, in favor of all or any of the parties to or Beneficiaries of this Trust whether as life tenants or remaindermen, *shall constitute income of the Trust and none of the revenue or receipts or proceeds in any way or manner derived from any disposition of any of the natural resources of any lands of the Trust Estate or otherwise collected or received by the Trustees . . . shall be deemed a part of the principal or corpus of the Trust Estate . . . but all such revenues and receipts and proceeds from any manner of disposition of any of the natural resources of lands of the Trust Estate or otherwise as above indicated shall constitute income of the beneficiaries of this Trust and shall not belong to the principal or corpus of the Trust Estate or to the remaindermen under this Trust.* The purpose of this clause is to make clear that all moneys received by the Trustees as such under this Trust from any and all sources are to be considered and distributed to the beneficiaries as income. [Emphasis added.]

We conclude the trust unambiguously "speaks for itself," and the clear intent of the settlors was that royalties and bonuses would not become a part of the trust "corpus," and that the "corpus" of the trust would include only the "trust estate." Therefore, under the terms of this trust, the fact that Carlos receives royalties and bonuses as revenue does not mean he has a present, possessory interest in the trust corpus.

Next, Leticia contends that because Carlos has a right to transfer his interest, he has a present, possessory interest in the corpus. We disagree. Carlos's ability, as a participating beneficiary, to transfer his interest is limited. As a participating beneficiary, Carlos has the right to transfer only to certain family members, their spouses, or any legal entity organized and owned by or for the benefit of such transferring participating beneficiary. Also, any such transfer is subject to all the provisions of the trust, including the spendthrift provision. Finally, "[a]ny other form of transfer by a participating beneficiary is expressly prohibited." We believe Carlos's restricted right to transfer his interest in the trust does not equate to him having a present, possessory interest in the trust corpus. *See Sharma*, 302 S.W.3d at 365, 367-68 (because husband had no present, possessory right to any part of the corpus, he was not effectively the owner of the trust corpus; therefore, trust income was not community property).

Next, Leticia contends the trust distributions are community property because the trust is "self-settled" and the participating beneficiaries retained the power to amend the trust. Leticia provides no authority for this argument, and we decline to adopt such a broad holding. Also, we note that, here, Carlos was one of many settlors of the Benavides Family Mineral Trust and he is not one of the current three trustees. We further note, "the fact that an income beneficiary also holds legal title to the corpus in his capacity as trustee should not be a controlling factor in the marital-property characterization of trust income." *Sharma*, 302 S.W.3d at 366.

Finally, Leticia contends Carlos has the right to receive all corpus on termination of the trust. Leticia is mistaken. The trust's term is set forth as follows:

> The term of the [trust] shall continue until the death of the last survivor of the now living child of Arturo T. Benavides and the children, grandchildren and great-grandchildren of Carlos Y. Benavides[5] plus 21 years. On the death of the last survivor among those designated in this paragraph, plus 21 years, this trust shall cease and terminate and all undivided beneficial interests shall immediately vest in accordance with the beneficial ownership then existing. . . . .[6]

Although all undivided beneficial interests will vest "as undivided legal interests in the participating beneficiaries in such proportions as their beneficial interests then appear," this will not occur until the trust terminates, which is long after Carlos's death. Therefore, we disagree with Leticia's final argument.

## CONCLUSION

We conclude the trust is irrevocable, and Carlos does not have a present, possessory interest in the corpus of the irrevocable trust. Therefore, we conclude, as a matter of law, the distributions

---

[5] Carlos is one of Carlos Y. Benavides's two children.

[6] We also note the ability to amend the trust does not extend to amending the term of the trust.

Carlos receives are not community property. Accordingly, the trial court did not err in rendering summary judgment in favor of Mathis.[7]

Sandee Bryan Marion, Justice

---

[7] Because our conclusion is dispositive of this appeal, we do not address Leticia's argument under Texas Probate Code section 883(c) that she has the right to community property delivered to the guardian of an incapacitated spouse.