# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00465-CV

---

**Justin W. LaPree, Appellant**

**v.**

**Kelly M. LaPree, Appellee**

---

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-18-005200, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Justin W. LaPree appeals from the trial court's final divorce decree rendered after a jury trial. Justin contends that the trial court erred in determining that certain personal property was Kelly M. LaPree's separate property and that Kelly did not give half of her separate property to him or sign an enforceable agreement converting it to community property. He further contends that the trial court erred in granting a directed verdict against him on his breach-of-contract and fraud claims. For the following reasons, we will affirm the final divorce decree.

## BACKGROUND

The parties married in 2012. While Kelly was a minor, her grandparents created three irrevocable trusts (the Norris Trusts)—in 1989, 1991, and 1992, respectively—naming her the sole primary beneficiary. The Norris Trusts—substantially similar to one another—provided that beginning on Kelly's twenty-first birthday, "the Trustee shall thereafter distribute to [Kelly] or for her benefit, all of the income annually or at more frequent intervals . . . [and i]f the Trustee

deems necessary, he shall be authorized to make distributions of trust principal, in addition to income, for the care, comfort, support and education of [Kelly]." Each trust had a corresponding Charles Schwab account containing stocks and bonds. Per the trusts' terms, upon Kelly's thirty-second birthday the trustee (who was the same person for the three trusts) had the discretion to "distribute the balance then remaining of the trust estate" to her. Kelly turned thirty-two during the marriage, on April 16, 2017. Shortly thereafter, the trustee terminated the Norris Trusts and distributed their contents to Kelly by removing the trust designation from the Charles Schwab accounts and identifying her as the accounts' sole owner. The total value of the Norris Trusts was approximately $2.3 million.

On June 26, 2017, Kelly and Justin retained attorney Rhonda Brink to assist them with estate planning. Brink's engagement letter, which she and the parties signed, included the following statement: "We discussed the characterization of property as separate or community, and you told me that you consider your current assets (including the funds that Kelly has inherited thus far) to be community property." Brink created a revocable trust (Revocable Trust) for Justin and Kelly, naming them both trustors and co-trustees. Justin and Kelly signed an accompanying revocable trust agreement (Agreement) on October 25, 2017, which included the following statement: "At the time this Agreement is signed, TRUSTORS contemplate that all of their assets that will be transferred to the Trust will be community property." It also contained the following provision in paragraph 18.2: "[A]n individual TRUSTOR, without joinder of the other TRUSTOR, can modify or revoke this Agreement in writing during the TRUSTORS' joint lifetimes while that individual TRUSTOR is not disabled with respect to any separate property of that individual TRUSTOR held as an asset of the Trust and such individual TRUSTOR may terminate this Agreement in whole or in part with respect to such separate property by written

2

notice delivered to the TRUSTEE." The Revocable Trust was funded with ten dollars, and Justin and Kelly thereafter opened a joint Charles Schwab trust account with an account number ending in 9339 (the 9339 Account). Between December 2017 and March 2018, Kelly transferred all of the stocks and bonds in the three Charles Schwab accounts corresponding to the Norris Trusts to the joint 9339 Account.

Kelly filed an original petition for divorce in August 2018. Justin answered and counter-petitioned. In an amended counter-petition, Justin brought causes of action against Kelly for breach of contract and fraud, alleging that she had promised or agreed that the Norris Trusts would be community property. In January 2019, Kelly filed a "Motion for Partial Summary Judgment to Characterize Separate Property"—and in March 2019 an amended motion—seeking a finding that particular assets, including those transferred into the 9339 Account from the Norris Trusts, are her separate property. Among the evidence she attached was the following: (1) copies of the Revocable Trust, Agreement, and Norris Trusts; (2) her affidavit; (3) copies of statements for the 9339 Account; (4) Justin's testimony from a prior hearing; (5) the deposition testimony of Brink; (6) a tracing and characterization report from her expert, Robert A. Metz; and (7) a September 10, 2018 letter Kelly sent to Justin revoking the Agreement with respect to "all of [her] separate property" held as assets of the Revocable Trust, pursuant to paragraph 18.6 of the Agreement. Justin filed a response to Kelly's motion, to which he attached evidence including his affidavit, a copy of the notes that Brink took during the parties' June 16, 2017 estate-planning meeting, and Brink's engagement letter.

In a May 7, 2019 order, the trial court granted Kelly's partial summary-judgment motion, determining that (1) the Agreement "does not constitute an agreement to convert separate property to community property because it does not meet the requirements of Texas

3

Family Code § 4.203" and (2) "the creation [of] the Revocable Living Trust does not constitute a gift" from Kelly to Justin.

In October 2019, Kelly filed a "Motion for Partial Summary Judgment to Characterize Kelly M. LaPree's Separate Property as of April 16, 2017." In this motion, Kelly sought a finding that as of her thirty-second birthday, "each and every monetary asset . . . held in [the Norris Trusts] . . . was her sole and separate property." She supported her motion with her affidavit; account statements for the assets in the Norris Trusts for the period April 1-30, 2017; and Justin's testimony. That same day she filed a "Motion for Partial Summary Judgment to Find Kelly M. LaPree's Revocation and Termination of Trust Agreement with Respect to Her Separate Property Held in Trust Valid" and shortly thereafter a "Motion for Partial Summary Judgment to Characterize Trust Assets and Real Property as Separate Property." Kelly supported her latter motion with, among other evidence, Metz's affidavit and accompanying exhibits. In separate December 20, 2019 orders, the trial court (1) overruled Justin's objection to the entire affidavit of Metz but sustained his hearsay objections to the affidavit's exhibits 10-19 and (2) granted in part Kelly's latter motion by finding that as of September 30, 2019, the total value of Kelly's separate property in the 9339 Account was $2,337,496 and the total value of the parties' community property in the account was $2,593.[1]

In late January 2017, a jury trial was held. After the parties rested, the trial court granted Kelly's motion for directed verdict regarding Justin's fraud and breach-of-contract claims. The sole issue submitted to the jury was conservatorship of the children. The trial court signed a final divorce decree on September 11, 2020 that, among other findings

---

[1] The order denied some portions of Kelly's motion and granted other portions, but we do not recite those particulars because they are not relevant to the issues on appeal.

and determinations, affirmed its two partial summary-judgment orders. Justin timely perfected this appeal.

## DISCUSSION

In his first issue, Justin contends that the trial court erred in granting partial summary judgment determining that (1) the Agreement did not constitute an enforceable agreement converting the corpus of the Norris Trusts from separate property to community property, *see* Tex. Fam. Code § 4.203; and (2) Kelly did not give half of the separate property she inherited from the Norris Trusts to Justin.[2] We conclude that the trial court did not err with respect to either determination.[3]

Section 4.203 of the Family Code provides the exclusive method for conversion of separate property into community property. *See id.*; *In re Estate of Cunningham*, 390 S.W.3d 685, 688–89 (Tex. App.—Dallas 2012, no pet.). A conversion agreement must (1) be in writing, (2) be signed by both spouses, (3) identify the property being converted, and (4) specify that the property is being converted to the spouses' community property. Tex. Fam. Code § 4.203. Justin contends that the Agreement meets each of these requirements, but we disagree as to the fourth requirement.

---

[2] Apart from the consequences of a purported conversion or gift and the characterization of any income distributed from and possibly reinvested in the Norris Trusts during marriage, it is undisputed that the corpus of the Norris Trusts was Kelly's separate property. *See* Tex. Const. Art. XVI, § 15 (All real and personal property of a spouse "owned or claimed before marriage" "shall be the separate property of that spouse."); Tex. Fam. Code § 3.001 (similarly defining separate property); *see also* Tex. Fam. Code § 3.003 (noting that, while any property possessed by either spouse during or on dissolution of marriage is presumed to be community property, such presumption may be overcome by clear and convincing evidence establishing that property at issue is separate).

[3] The standard of review for summary judgments is well-established and will not be recited here. *See* Tex. R. Civ. P. 166a(c); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

The only provision in the Agreement on which Justin relies to support the fourth requirement is the statement that the parties "contemplate that all of their assets that *will be transferred* to the trust will be community property." (Emphasis added.) However, this statement does not specify that the assets *are being converted* to separate property, despite Section 4.203's express requirement—by use of the present tense—that a property conversion occur contemporaneously, as opposed to in the future. *See id.* At best, the statement signifies an aspiration about future unspecified property—that unspecified property transferred into the Revocable Trust *will be* community property. However, even if that statement signified the parties' *intention* that future funding of the Revocable Trust "will be" community property, paragraph 18.2 of the Agreement expressly provides for the possibility that the Revocable Trust might *also* contain the parties' respective separate property. The statement on which Justin relies cannot be read to irrevocably convert to community property all of the parties' respective separate property that henceforth is transferred into the Revocable Trust because the provision in paragraph 18.2 directly contemplates that some of the property held in the Revocable Trust might instead be separate property. In light of the statute's express requirement that a conversion agreement identify which property is *presently being converted*—which it does not do—and because Justin's proposed construction of the Agreement is at odds with paragraph 18.2, we conclude that the Agreement does not constitute an enforceable agreement to convert Kelly's separate property into community property. The trial court did not err in granting Kelly partial summary judgment on this issue.

We next turn to Justin's contention that Kelly gave him half of the separate property she inherited from the Norris Trusts. To support the alleged gift, he relies on his affidavit statement that "[o]n or about June of 2017, Kelly . . . told me that she intended to give

6

me one-half interest in the $2.3 million she was receiving from [the] Norris Trust[s] . . . by forming the" Revocable Trust. He also relies on Kelly's transfer to the 9339 Account the $2.3 million in assets from the Norris Trusts.

A gift is a voluntary transfer of property to another made gratuitously and without consideration. *Nipp v. Broumley*, 285 S.W.3d 552, 558 (Tex. App.—Waco 2009, no pet.). "Three elements are required to establish the existence of a gift: (1) the donor's intent to make a gift; (2) delivery of the property; and (3) acceptance of the gift. Donative intent must exist at the time of the transfer, not at the time of a subsequent event." *Id.* Donative intent means that the donor "absolutely and irrevocably" intends to divest herself of the "title, dominion, and control of the subject of the gift in praesenti at the very time [s]he undertakes to make the gift," and involves the "irrevocable transfer of the present title, dominion, and control of the thing given to the donee, so that the donor can exercise no further act of dominion or control over it." *Id.* at 559. In reviewing the trial court's summary judgment on this issue, we consider whether the evidence creates a genuine issue of material fact on these elements. *See* Tex. R. Civ. P. 166a(c).

Kelly's alleged statement to Justin in June 2017 does not create a genuine issue of material fact on the "donative intent" element of a gift because there was no contemporaneous transfer of property. *See Nipp*, 285 S.W.3d at 558–59 ("[T]he requisite donative intent is established by, among other things, evidence that the donor intended an *immediate and unconditional* divestiture of his or her ownership interests and an immediate and unconditional vesting of such interests in the donee."); *see also Ellebracht v. Ellebracht*, 735 S.W.2d 658, 659 (Tex. App.—Austin 1987, no writ) (noting that donative intent of grantor at time of conveyance is "controlling factor" in proof of gift). Furthermore, Kelly's deposits to the 9339 Account of the Norris Trust assets cannot establish donative intent. *See* Tex. Est. Code § 113.012 ("During the

7

lifetime of all parties to a joint account, the account belongs to the parties in proportion to the net contributions by each party to the sums on deposit unless there is clear and convincing evidence of a different intent."). Moreover, the Agreement's express terms granted both Kelly and Justin equal control and title to the transferred Norris Trust assets as well as permitting Kelly, as the owner of separate property transferred into the Revocable Trust, to unilaterally revoke the trust as to her separate property held therein. This retention of control by Kelly over her separate property conclusively negates any donative intent on her part evidencing that she "absolutely and irrevocably" intended to divest herself of the "title, dominion, and control" of the Norris Trust assets and could exercise "no further act of dominion or control over" the property. *See Nipp*, 285 S.W.3d at 559. Justin does not identify any evidence in the record that creates a material fact issue supporting his allegation that Kelly had donative intent when she transferred the Norris Trust assets into the 9339 Account. We therefore conclude that the trial court did not err in determining that, as a matter of law, Kelly did not make a gift of half of her separate property to Justin. *See* Tex. R. Civ. P. 166a(c).

In his second issue, Justin contends that the trial court erred in finding, as a matter of law, that the majority of the assets in the 9339 Account is Kelly's separate property. To the extent we understand his argument, he appears to be contending that Kelly was required to prove that all of the funds in the Charles Schwab accounts corresponding to the Norris Trusts *prior* to the trusts' termination on April 16, 2017 were, in fact, separate property (i.e., trust principal) as opposed to reinvested income (i.e., community property) that was comingled with Kelly's separate property. Without such proof, his argument continues, Metz's tracing of the funds from April 16, 2017 until their deposit into the 9339 Account—with which tracing Justin does not take

8

issue—"fails" because it is based on the "false premise" that all of the funds in the Norris Trusts prior to then were separate property.[4]

Justin's argument fails for two reasons. First, in his testimony at a February 2019 hearing, Justin admitted that he never contributed "any money" to the 9339 Account and that the "entire assets" in the 9339 Account were funded from Kelly's separate property. A party's judicial admission estops him from challenging its truth. *See Russell v. Russell*, No. 01-04-00984-CV, 2006 WL 241476, at *3 (Tex. App.—Houston [1st Dist.] Feb. 2, 2006, no pet.) (mem. op.) (holding that wife's statement in inventory she filed with court characterizing property as spouse's separate property estopped her from challenging its characterization on appeal); *see also In re Marriage of Douthit*, 573 S.W.3d 927, 930–31 (Tex. App.—Amarillo 2019, no pet.) (holding that wife's testimony that spouse owned property before marriage estopped her from complaining on appeal that spouse did not establish fact of separate property with sufficient evidence). Secondly, any distributions of income from the Norris Trusts that Kelly received during the marriage (and which might have been reinvested into the Norris Trusts) constituted her separate property because she had no present possessory right to any of the corpus by virtue of the trusts' express terms. *See Sharma v. Routh*, 302 S.W.3d 355, 357 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that income distributions from trust during marriage are community property only if recipient has present possessory right to part of trust corpus); *see also Benavides v. Mathis*, 433 S.W.3d 59, 63–64 (Tex. App.—San Antonio 2014, pet. denied) (holding that because trust was irrevocable and husband had no present, possessory right to any part of its corpus, income distributions from trust during marriage were husband's separate property). While Justin acknowledges that *Sharma* states the correct rule, he

---

[4] Metz did not perform line-item tracing for the three Charles Schwab Norris Trust accounts for the period prior to April 16, 2017.

contends that the Norris Trusts "raise the possibility that Kelly had a right to the trust corpus" before her thirty-second birthday due to the trusts' provisions allowing the trustee, if he deemed it necessary, to distribute trust corpus to Kelly for her care, comfort, support, and education. Such language did not confer on Kelly a present, possessory interest in the Norris Trust corpus because it did not allow her to compel the trustee to distribute any of the trust corpus and provided merely for the trustee's discretion in making principal distributions to her. *See Ridgell v. Ridgell*, 960 S.W.2d 144, 147–48 (Tex. App.—Corpus Christi-Edinburg 1997, no pet.) ("Under a discretionary trust . . . the beneficiary is entitled only to the income or principal that the trustee, in its discretion, shall distribute to him. The beneficiary cannot compel the trustee to pay him or apply for his use any part of the trust property." (citation omitted)). The trial court did not err in determining, as a matter of law, that the majority of assets in the 9339 Account is Kelly's separate property. We accordingly overrule Justin's second issue.

In his third issue, Justin contends that the trial court erred in directing a verdict in favor of Kelly on his fraud and breach-of-contract claims because the evidence raised a material fact issue on each. *See Prudential Ins. Co. of Am. v. Financial Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (outlining standard of review for directed verdict). To prevail on his breach-of-contract claim, Justin needed to establish the following: (1) the existence of a valid contract, (2) his performance or tendered performance, (3) Kelly's breach of the contract, and (4) damages as a result. *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. App.— Houston [1st Dist.] 2001, no pet.). The elements of a valid and enforceable contract are (1) an offer, (2) acceptance in compliance with the terms of offer, (3) a meeting of the minds, (4) each party's consent to the terms, (5) consideration, and—for written contracts—(6) execution and delivery of the contract with the intent that it be mutual and binding. *Pearson v. Fullingim*,

10

No. 03-03-00524-CV, 2006 WL 358230, at *3 (Tex. App.—Austin Feb. 17, 2006, no pet.) (mem. op.).

Justin contends that he and Kelly had both an oral and a written contract specifying that the Norris Trust funds would become community property. The oral contract, he argues, consisted of Kelly's promise—"multiple times" before the creation of the Revocable Trust—that proceeds she received in the future from the Norris Trusts would be community property. The written contract, he contends, is the Agreement's provision that the parties "contemplate that all of their assets that will be transferred to the Trust will be community property." We conclude, as a matter of law, that neither the Agreement nor Kelly's oral "promises" constitute valid contracts requiring Kelly to convert her separate property to community property. Besides allowing for an end-run around Section 4.203, Justin's argument dispenses with a necessary element of a valid contract: consideration, i.e., mutuality of obligation, which is a bargained-for exchange of promises. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408–09 (Tex. 1997). "A contract that lacks consideration, lacks mutuality of obligation and is unenforceable." *Id.* Justin has pointed to no evidence of probative force in the record raising a fact issue to show that the alleged oral and written contracts were supported by consideration—specifically, that he promised anything in exchange for Kelly's oral "promises" or that in the written Agreement either party was obligated to do anything. Accordingly, the trial court properly directed a verdict in favor of Kelly on Justin's breach-of-contract claim.

To have prevailed on his fraud claim, Justin needed to establish that (1) Kelly made a material misrepresentation, (2) Kelly knew the representation was false or made it recklessly without any knowledge of its truth, (3) Kelly made the representation with the intent that Justin would act on it or intended to induce Justin's reliance on the representation, and

11

(4) Justin suffered an injury by actively and justifiably relying on that representation. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011). We conclude that the trial court properly directed a verdict in Kelly's favor on Justin's fraud claim because there was no evidence raising a material fact issue on at least the first and third elements.

To be actionable, and notwithstanding an exception for certain opinions not applicable here, a misrepresentation must be a false statement of fact or a promise of future performance with the intent not to perform. *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983). Justin points to the following evidence to support the material-misrepresentation element: (1) Kelly's telling him multiple times that the funds from the Norris Trusts were "going to be community property" and would be "shared" and (2) the Agreement's provision that the parties "contemplate" that assets transferred to the Revocable Trust will be community property. Neither of these representations constitute statements of fact, however, and to the extent that they might constitute promises of future performance, they do not identify any definite promise of future action on Kelly's part and are too vague to support the material-misrepresentation element of fraud. *See Cadle Co. v. Davis*, No. 04-09-00763-CV, 2010 WL 5545389, at *8 (Tex. App.—San Antonio Dec. 29, 2010, pet. denied) (mem. op.) ("Promises must be specific and definite enough for it to be reasonable to rely upon them," and "Vague representations cannot constitute a material representation actionable under our laws."); *In re Media Arts Grp., Inc.*, 116 S.W.3d 900, 910 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (noting that statement "don't worry about it" was "entirely too vague to constitute a material false representation that party would not enforce arbitration agreement).

Moreover, even if Kelly's representations were actionable, Justin cannot point to any evidence creating a material fact issue on whether he was injured by justifiably relying on

12

Kelly's representations. Although he contends that he quit his job and became a firefighter, thereby taking a large pay cut, in reliance on Kelly's representations, the record conclusively establishes that he made the decision to become a firefighter in 2015, but the earliest of Kelly's representations occurred in 2017. He also contends that he signed a mortgage on the parties' new residence in reliance on Kelly's representations, which he would not have done had Kelly not promised to "share" the Norris Trusts with him. However, there is no evidence that he suffered any injury by such mortgage because he testified that the parties had sold the residence for an amount well above the outstanding mortgage and would use the proceeds from the upcoming closing to pay off the mortgage in full and he would no longer be liable therefor. Finally, Justin cites to no evidence in the record to support his argument (made for the first time on appeal) that—had Kelly not made the promises at issue—he would have hired another attorney to prepare an enforceable conversion agreement. Accordingly, we conclude that the trial court properly directed a verdict on Justin's fraud claim. We overrule Justin's third issue.

## CONCLUSION

Having overruled Justin's issues, we affirm the trial court's final divorce decree.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed: February 24, 2022

13